May it please the Court. Good morning, Your Honors. My name is William Voigt, and I represent Petitioner Robert Small. I will try to reserve five minutes of my time for rebuttal. In 2001, Mr. Small was granted withholding of removal because an immigration judge found that were he removed to his country of origin, he would likely be persecuted there. In 2009, following two other acts that would not themselves have been grounds for denial of withholding of a regulation that applies only to, quote, other acts that would have been grounds for denial of withholding of removal. The government's interpretation of that regulation, that it may aggregate Mr. Small's other acts together with the original act for which he was granted withholding in the first place, is unprecedented. It's contrary to the plain language of the regulation, and it's contrary to every canon of statutory construction discussed in the briefing, not the least of which is this Court's clear and consistent refrain that immigration regulations must be liberally construed in favor of the immigrant, because the difference between deportation and no deportation is all too often a difference between safety and persecution, and in some cases, as the BIA itself said in the al-Babashi case, interpreting this very regulation in favor of the immigrant on the issue of sentencing aggregation, it can be in some cases the difference between life and death. So the government raises a minor concern. It does, Your Honor. It argues that when he appealed to the BIA a second time, he didn't raise it. The government does say that, Your Honor, but that's contrary to this Court's repeated precedence about pro se immigrants' preservation before the BIA. You don't even have to raise arguments. The case that the government cites, the Figueroa case, which Judge Tashima authored, was a case in which the immigrant was even represented, and the government said, you didn't make a sufficient argument, and the Court said, you don't even have to make arguments. You just have to state an issue. The BIA brief repeatedly says, my withholding should not have been terminated, and it repeatedly says, I should not have been found to have been convicted of a particularly serious crime. The government argues particularly serious crime because of sentencing aggregation. Mr. Small in that brief also repeatedly says, my sentences should not have been aggregated. So it doesn't look, I mean, it's extremely misleading that his felonies were sufficiently raised. It doesn't look like the BIA addressed the issue. The BIA seemed to address the issue erroneously. I think what the BIA assumed was the same thing the immigration judge assumed, which is what the government argues. You now look at whether Mr. Small is eligible for a denial of withholding of removal, and it sort of pushed the whole analysis together. But it didn't look, it didn't look, it didn't address whether there had been a proper termination of his withholding. That's probably right, Your Honor. It was conceptualizing whether his termination of withholding was proper and whether his, he was currently eligible as the same thing, and it used the language of the latter. So I don't know that it was, it was trying to reach the specific issue as we've teed it up. But Mr. Small is a process. So if we agree that, you know, it's not a completely ridiculous argument or has plausibility to it, wouldn't the remedy be to send it back to the BIA? Our case law is pretty clear that they get first crack at it in interpreting their own regulations. I don't think so, Your Honor. This is a pure issue of law. It's not something in which there's any satisfaction. It's a regulation. It is, Your Honor. And even outside of the BIA context, agencies get it. There's a lot of difference. That's true, Your Honor. Our difference, I think, is given to the BIA. That's right, Your Honor. And the case the government cites is the Orlando-Ventura case. That was a case in which there had not been fact-finding made by the agency. Both the immigrant and the government asked for a remand, and the Court in that case reached the issue in the first instance. And the Supreme Court reversed and said, both parties asked you to remand. It involved fact-finding. That's what the agency does. You should have remanded. In this case, we're talking about a pure issue of law. The Orlando-Ventura case itself also says, if the court, if the BIA or the agency were to rule to the contrary, and you would be required to reverse anyway, there's no reason to remand. Here, the government has articulated no canon of construction, no argument, no policy, nothing that would rule against the ---- Well, they have. They say send it back to the BIA. They've got their footnotes in there. They do, Your Honor. And I submit they have no argument to make there because they haven't preserved any argument in this Court as to what they're going to, whatever this mystery argument is they're going to make about the regulation. The BIA said in the al-Danishay case, you have to construe this regulation in favor of the immigrant. Well, if I remember correctly, they did make an argument, and would have, that if you add the two subsequent crimes to the prior crimes, it would have aggregated more than five years. That is their plain language argument, Your Honor. They do make an argument. They make an argument about the plain language. But if they fail to convince this Court that the plain language compels their conclusion, they enter this area where this Court, every circuit of which I'm aware, and the BIA is very clear, the because the seriousness of the consequences of deporting him is so severe. And if the BIA has said that repeatedly, and this Court has said that repeatedly, and the government has no argument about an ambiguous regulation, why it should be construed in their favor other than plain language, there would be no point in remand. I would also point out, Your Honors, that Mr. Small is detained, so another year of this is a very serious thing for him. As a pure issue of law, it's appropriate for the Court to reach it in the first instance. I would also point out that, although this is probably an issue of first impression, the Gutierrez case that we discussed is of some help to this Court and should provide a guidepost. And it's the only case of which I'm aware in which you had a pre-withholding other act, you had a granted withholding and a post-withholding other act, and this Court was called upon to say, under this particular regulation, which of these would constitute grounds for denial of withholding removal, which of these would be grounds for termination. And the Court looked only at the second post-withholding act. It could have looked at the first one under the government's argument, but it didn't, and it would have if the government were right. I also don't think that the regulation really works and becomes nonsensical when you look at it in any other context in which the government would apply its argument. The government's argument is that you look at the other act and then see if it would have pushed this first act over the top. It would have the government's language is it would have rendered him ineligible, which is language that doesn't appear in the regulation, but that's what they contend the regulation means. You can prove particularly serious crime other than by sentencing aggregation. The first sentence of the regulation that the statute that cited is sentencing aggregation. The second sentence is, but if you look at the nature of the offense and it's particularly serious, you can prove it that way. Well, there's no other act, you know, nothing that he could do in 2009 that would change the nature of what he did in 1997. I mean, the notion that you're looking at this to push the previous one over the top just renders the regulation nonsensical in any other context in which the government would make the assertion. So the whole structure of the regulation, all of the canons of construction, I think another important point to make is that immigrants have a significant reliance interest in the finality of a granted withholding of removal. Under the government's argument, someone can commit a four-year and 11-month offense when he's 19, live a model life for 50 years, and then when he's approaching his 70th birthday, have a qualifying one-month sentence, and the government can say, aha, now you've committed a particularly serious crime. There is no temporal or logical connection between these things. It contravenes all of the canons of construction we've discussed. So assume for a moment that we would agree with you. What do you want us to do? What are you asking us to do? You should remand the construction that Mr. Small's withholding of removal be reinstated and that the termination was invalid. And if Mr. Small's termination was invalid, everything else in this case is just an academic question, and the Court doesn't need to reach it. I would, however, be remiss if I didn't also discuss reasons that Mr. Small, if you don't agree with me that this regulation was improperly applied here, should excuse me, and the most important of which is there is undisputed legal and constitutional error here. I don't know how often it is that parties come before the Court and the government doesn't dispute that someone's due process rights are violated, but this is that case. Mr. Small asked for his prior court file. He has a constitutional right to that file. The government said you have to make a FOIA request to get it. This Court in Dent said that is a deprivation of due process. You do not have to jump through hoops in order to obtain a prior file. And in that case, that was an A file. That was something that could have confidential information in it. This is an open court file. Anybody could go get it. And that was the government does not dispute unconstitutional and a deprivation of due process. So you have to show prejudice, though, if there is a constitutional error. We do, Your Honor. It's a prejudice. Well, the government's argument is this. We felt we needed to review this file, Record 1098. They spent the better part of what must have been the better part of a day listening to seven tapes. It comes to about, I think, 250 or 300 pages of testimony. We spent the time to do that, but Mr. Small didn't really need to do that. He wasn't prejudiced by not being able to do that. How was that preserved below? Mr. Small made the request to the – I submit this is a Dent-like case. And I certainly understand the government's argument about preservation on this point because, you know, Mr. Small's BIA brief really wasn't directed at that. However, the BIA brief in Dent likewise did not raise the issue. And as I understand this Court's reasoning in Dent, when someone is making a request for a file, we don't look at whether or not sort of it's formalistically preserved. We look at, did you make the request? Is it reasonable to ask someone to do more in your circumstances? And are you prejudiced? I think prejudice here is pretty clear, hundreds of pages, expert testimony about the conditions and Mr. Small's likelihood of death if he was to be returned. And I think that he made the request undisputedly. So the question is, is it reasonable to ask him to do more? And I would submit that a pro se immigrant who is instructed by the immigration judge, you have to do this, this is the law, is not likely to turn around and start making challenges to the immigration judge either directly or implicitly. A lot of these people, you know, come from countries where if the judge tells you you don't have a right, that's correct and you don't challenge it. So he made the request. He repeatedly, as in Dent, focused on the issues that were there. He talked about what he – about unchanged conditions. But what you're saying is he didn't really preserve it, as that word is ordinarily understood, but there's other reasons that he got involved in this argument. He preserved it within the meaning of Dent. He certainly didn't preserve it, I think, in the way that if he were represented, he would have, and the Court usually views it. But in Dent, there is an exception for making requests. If you make the request and you do what a reasonable immigrant would do under the circumstances, it's exactly like Dent, and even more seriously than Dent. In this case, he was instructed by the judge erroneously on the law. And under those circumstances, he should be deemed to have exhausted it. With Your Honor's permission, I'll reserve the bail. That's fine. Thank you. Good morning, Your Honors. Anita Namataya-Tumla for the government. Going to the first question that opposing counsel was asked in terms of his exhaustion of the termination inquiry, Your Honor. You're absolutely right, Judge Pys, that Mr. Small, in this case, did not exhaust the issue in terms of raising it or including it in his notice of appeal or his brief to the BIA. And in terms of that, I'm stating that he didn't argue about the aggregation of the convictions. And so he sort of did raise the termination issue. He raised it, Your Honor. I'll concede that he has a sentence in the brief, but not in terms of the aggregation of the convictions. Well, but you don't have to make specific arguments. That's true, Your Honor. I mean, we have a very, our case law is very... That's entirely correct, Your Honor. It's very generous and profane and... And that's why the government argues also as to the merits of termination in the event that the court doesn't agree with our exhaustion argument, we go to the merits of it. And we also argue that the termination was correctly done underneath the regulation. And I would go as far as saying that the agency decision implicitly addresses the termination inquiry because there's no way that the agency could get to his relief from removal and analyze his withholding and look at whether or not he had a particularly serious crime if they hadn't found that the termination was... Well, they could, you know, he's not challenging the termination. Well, Your Honor, if in order for the immigration judge or the agency rather to look at his relief from removal, they had to do an inquiry as to whether or not he was eligible for withholding. That analysis is similar to the termination inquiry in the sense that they would have to look at whether or not he had a particularly serious crime. And that was done in the agency decision where they found that they could aggregate or the aggregation was correct. And so he did have particularly serious crimes that did bar him from withholding of removal. And that's how the agency reviews it and then goes to the CAD deferral. So the government would submit that that analysis, the termination inquiry, is correct in terms of getting to the merits of that argument. But they didn't specifically discuss his argument. Is that correct? Well, Your Honor, that's because he didn't make any arguments about the aggregation of his conviction. What's wrong with his argument? Is it completely implausible? Is it completely an implausible interpretation of the regulation? In terms of your question again, Mr. Small's argument? Yes, the argument that he's advancing in the brief today. Oh, in terms of the brief today, in terms of exhaustion? No, no, in terms of the merits. Let's just talk about that. Yes. Why is it completely implausible? Well, 241 v. 3 specifically says that for purposes of Section 241 v. 3, which is withholding an alien who's been convicted of an aggravated felony for which the alien has been sentenced to an aggregate term of imprisonment. So the very statute itself refers to an aggregation of the convictions. And what the agency did is look at those convictions, and they looked at the 1997 conviction based on the specific language of the statute which says if he'd had these convictions prior to the initial grant, he would have been denied withholding of removal. If Mr. Small had these 2009 convictions, which was his second domestic violence conviction and an aggravated assault with a deadly weapon, if he'd had these prior to the initial grant and the immigration judge had been reviewing his case, there's no question that looking at the aggregation, the aggregate sentencing, he would have been – it would have been denied because they would have been more than five years. And so that's the plain language of the statute, and that's the argument in the government's brief. Okay. And, Your Honor, we did preserve – yeah, so – and then in terms of counsel's argument in terms of – unless there are any further questions about the termination inquiry, I would want to move to the – Well, Your Honor, I think it was in your brief, it was just the text of the regulation which says the alien has committed any other act that would have been grounds for denial of withholding of removal under 21 – under 241b3d, right? Yes, Your Honor. Had it occurred prior to the grant of withholding of removal. And so that's our argument. If those two 2009 convictions had occurred prior to the grant of withholding, they would have been grounds for the withholding because – Because they would have been able to aggregate. So aggregate the three. So at that point, he would have had his first conviction for domestic violence. He would have had a second conviction for domestic violence. And he would have had the aggravated assault. And for the 1997 conviction, the sentence was two years. For the 2009 domestic violence conviction, that was a three-year sentence. And the 2009 assault conviction was a one-year sentence. And so in the aggregate, it would have been over five years. By my count, it would have been three, four, five, six years. And so that would have been – I guess you could read the regulation to say that the subsequent conviction after the grant by itself, which is, I think, his argument. And, Your Honor, I just don't see it that way because the statute said, had this other act occurred prior to the grant of withholding. So it's the subsequent act. If this subsequent act had occurred prior to the grant of withholding and the immigration, he wouldn't have been granted withholding. I honestly don't see how counsel could find that. Gutierrez doesn't necessarily speak to the issue because, in that case, those two crimes were, per se, particularly serious crimes. And so there was no analysis in Gutierrez about whether or not there was an aggregation. There was no discussion in Gutierrez about whether or not these could be added together to make particularly serious crimes. They were, per se. You could say you looked at the case as a subsequent by itself. If that act had occurred prior to the grant, it would have been out. They could have looked at it that way. And they also could have – you know, counsel argues that, well, the government – you can't assume that the two crimes could have been aggregated because that wasn't done in Gutierrez. But the Department of Homeland Security could have said they had a stronger case in Gutierrez because there were two prongs under which they could terminate his withholding of removal. So I don't believe that that's a strong argument and helpful in that sense from that point of view. Were there – If you're finished with it, why don't you go on to the due process argument? Yes, Your Honor. So going to the due process argument, I don't believe counsel paints a full picture of the proceedings because when you look at the record, when Mr. Small was initially before the immigration judge and he made the remark about needing to make a FOIA request, which that in and of itself, I believe, is not an incorrect statement under the Immigration Practice Manual, which is what EOIR and the judges use. It's sort of like their local process for the court. But the immigration judge said to him, I don't have it. He's like, are you asking for your DHS file, your court file? He said, I have your 589. He then photocopied the 589 and gave it to Petitioner. DHS attorney then said, oh, there's a supplemental 589, which is the asylum application. There were two in his prior file. The immigration judge copied that and gave it to Mr. Small. At that point, Mr. Small didn't say, oh, Your Honor, actually what I meant is the expert witness testimony or the statements by, you know, the transcription from the prior testimony. Mr. Small accepted the 589, and the case was continued. In fact, the case was continued several times for Mr. Small to get supporting documents. The immigration judge explained to him at that first hearing that what you need now is to show me about your CAT, CAT deferral, which is an entirely different type of relief or protection, rather, because that's what it is, from the first time, from what you applied for the first time when you're in front of the immigration judge. And that's a higher standard it has to show torture. In that prior case, I mean, opposing counsel hasn't pointed. I mean, he, you know, he states very vaguely, oh, the evidence in the record, evidence in the record. He hasn't shown what exact evidence in the record would have helped him. And that's that, you know, he hasn't been able to show the prejudice. The beauty of this is the statements and the transcripts and the supporting documents, they are in the record. They're in the certified administrative record, so the court can see for itself what those documents were. And when you look at those documents, Your Honor, which I would like to stress went towards his withholding of removal, they do show that country conditions back then in Jamaica were bad. They do show that there was some corruption and abusive members of the police force, which is why Mr. Small is trying to grasp onto those documents, because now in Jamaica, the country record, which is what the immigration judge was looking at, shows that Jamaica has made a concerted effort to remove these corrupt and abusive members, that they have created agencies, this is an agency, an independent agency called Indicom. There's another one called BSI, where prisoners are able to make complaints of police abuse and they're transferred to the public defender's office. So when Mr. Small was before the IJ, the IJ at one point, I believe it was in a May 29, 2000 hearing, the immigration judge said, we've continued this case for so many times because you haven't submitted these supporting documents. And he turns to Mr. Small and he says, tell me exactly, who have you asked to submit this supporting evidence and what is the supporting evidence you've asked for? And Mr. Small says, well, I've asked for the Amnesty International report. I've asked for some newspaper articles from friends and family. And the immigration judge says, well, these are all, this is all information that could be gotten from the internet. He says, your father is here in court. Why don't you ask your father to help you submit these supporting applications? And Mr. Small says, well, he doesn't want to burden his father. And the judge says, no, your father's made the time to come to court and, you know, be here on your behalf. Ask your father. Mr. Small also had a prior attorney when he was before the immigration judge the first time. So not only was Mr. Small aware or should have known what was in his file because he submitted it and his attorney submitted it on his behalf, but if he really wanted certain material, he could have also asked his father to contact that prior attorney or he could have asked his father to contact the immigration judge. So it's not, it's not dense, you know, opposing counsel is referring to dense in arguing that this is, you know, the file sort of inferring that maybe this file had information or content that Mr. Small was not aware of. This is not the case. This is Mr. Small's own document that he prepared for the court and presumably had. I guess I understand what you're saying, but as I understood his argument it was that as a returning deportee, U.S. deportee, that in Jamaica, those particular individuals are subjected to persecution and he's afraid he's going to be tortured, I guess. Correct, Your Honor. And so the information in the prior proceeding kind of went to that whole point because that's the basis of it. I understood the immigration judge granted withholding, traditional withholding of removal at the prior proceeding. Yes, Your Honor. Is that right? That's correct, but I have to agree. No, I mean, I understood I.J.'s point that, well, now we have to look at torture. There's a reasonably likely, reasonable probability that you'll be tortured if you go back because of your status as a returning U.S. deportee. And he wanted that information from the prior proceeding to lay the groundwork, and admittedly, he said he was in a tougher place because he had to show a reasonable likelihood of torture, not just persecution. Absolutely, Your Honor. And my response is. But nonetheless, I mean, that information was necessary and helpful to him, at least he felt it was. Yes, Your Honor, and that information was before the judge, and as I mentioned. Would it be confident? Sorry, would it have been a conflict? Confident that the second judge looked at all that information, the first proceeding, thoroughly. Absolutely, Your Honor. And even if it's not, and again, because the immigration judge does state on the record, and it's on page 431, 432, when he asked for the initial, when he asked for the file, the judge says, oh, he makes the misstatement, I don't have it. He says, oh, I do have it. So the immigration judge acknowledges there, page 432, I do have the record because it's the same removal proceedings that were reopened, and the court can see that the record was before the judge and it was considered because it's now in the certified administrative record before this court, so you can see the documents that were there. And the judge reminds him again that it's a torture standard, not persecution, and for withholding, you have to prove that there's a link between an enumerated ground. So there, it was a particular social group, the American criminal deportees, unlike the torture protection application, you didn't have to prove any enumerated grounds. So I would say that the particular social group is American, not that it's less important, but not such, it wasn't an element or, you know, part of the analysis there. And one more thing, on the record at page 393, 394, the former immigration judge, when she was granting withholding of removal, she states that she was inclined to deny CAT based on the record that was in front of her. And so based on that analysis, that record, I would say that that also shows that Mr. Small wasn't prejudiced. So even if the court doesn't buy the government's first argument that it's very clear that the immigration judge or the agency did consider it, in terms of prejudice, he hasn't been able to show any prejudice because Well, your first argument was that you didn't think he thought. Yes, Your Honor. And we have that in our brief. And then we say, but in any event, he wasn't prejudiced. And again, that goes to my points I'm making about the CAT deferral and the documents in the record which show that there is no acquiescence on behalf of the government. So I would just ask that the court would deny the petition for review because substantial record evidence supports the CAT deferral denial. Thank you. Thank you. May it please the Court, William Boyd again for Mr. Small. To respond to a few points the government raised, the government said that on R-432, the immigration judge said it did have the record on R-432. The immigration judge said, I had your prior application. The judge specifically said on R-431 he did not have the prior proceeding, the prior court testimony, which is the key testimony that Mr. Small was deprived of. Okay. Tell us again what that key testimony was. Mr. Small introduced the testimony from an expert, Keith Campbell, who testified that if Mr. Small was deported, he would be put into indefinite detention. And when did that testimony occur? That occurred in the first immigration proceeding. Which was 19? It was in 2000 or 2001 is when he gave that testimony. Earlier. Yes. Some time ago. And then the government says, or the Attorney General says, the times have changed. And isn't she right? All of that is available. I mean, it's available. The State Department is available. The Timeless Magazine is probably there in order to take it. Your Honor, Mr. Small's Your Honor, Mr. Small's prior expert testimony was not. And this Court ---- Oh, yeah. But how long ago was that before the actual removal? It was about 10 years, Your Honor. About 10 years. But if I may read from the 2010 Country Conditions Report that the government relies on, this is Record 730. It appears in several places. Under the heading, Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, there are three or four pages on prison conditions. It talks about prison conditions. And where did you get this? This is the report that they introduced in the second proceeding. It corroborates Mr. Small's expert testimony from the first hearing that prison conditions, if you were deported back into them, would expose him to a probability of death. And that's what his prior expert testified. And that was on Record 335 through 36, that these are horrific conditions. We're not talking about the conditions. We're talking about the availability of the information. You're telling me now, as I understand it, that that information was available at the second hearing. No, Your Honor. Mr. Small's prior in-court testimony, hundreds of pages, including expert testimony, was not provided to him. It was denied him. It was not available to him. He was held in detention without Internet access. He was taken out of California where his family was and put into a new State. He did not have the ability to get this file. He asked for it and was told he had to make a FOIA request. That's a deprivation of due process. I think we're talking about that. I do want to address your point, Your Honor. I'm sorry if I'm missing it. No. What I'm talking about is the information she was talking about, and that is information publicly available at the second hearing. Yes, Your Honor. The State Department report was available to him at his second hearing. Yes. Go ahead. His argument is that he was prejudiced by not having his prior hundreds of pages of testimony saying, if you deport me, then I'm going to be put in definite detention, something the government has never contended has changed, and that if I'm in definite detention, prison conditions are horrific. And again, the government has never addressed those prison conditions. I see I'm out of time. Yes, you're out of time. Thank you, Your Honor. Thank you very much. Thank you, counsel. We appreciate your argument. It's an interesting case. The matter is submitted at this time. Thank you. Thank you.
judges: Quist, Tashima, Paez